# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| XENOS YUEN, AS TRUSTEE FOR | § | |
| KAM CHU CHENG, | § | |
| dba KCC ENTERPRISES, | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | |
| | § | |
| TRIPLE B SERVICES, LLP, (owner of T-B) | § | Cause No. 4:18-cv-3277 |
| ASHLAR DEVELOPMENT, LLC, | § | |
| BIG R TRUCKING, LLC, | § | |
| JUAN LUIS BARBA, | § | |
| RAUL BARBA, JR., | § | |
| J. MARTINEZ TRUCKING | § | |
|     And | § | |
| JOHN DOE TRUCK DRIVERS 1 – 100, | § | |
|     Defendants | § | |

## PLAINTIFF'S FIRST SUPPLEMENTAL COMPLAINT

Xenos Yuen, trustee for Kam Chu Cheng, dba KCC Enterprises

("KCC") files this Complaint and alleges as follows:

### I.    NATURE OF ACTION

1.    KCC brings this civil action against Triple B Services, LLP,

Ashlar Development, LLC, Big R Trucking, LLC, Juan Luis Barba, Raul

Barba, Jr., J. Martinez Trucking, All Road Transport, LLC, Bruno R. Luis,

Danny Arjona, David Vela, Gilberto Luis, MTZ Trucking, Inc., Pedro

Amaya, dba Santa Fe Trucking, Esteban Requena, dba Transport Requena A, and John Doe Truck Drivers 1-100 pursuant to Sections 107 and 113 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ( "CERCLA" ) 42 U.S.C. §9607, as amended by the Superfund Amendment and Reauthorization Act of 1986, 42 U.S.C. §9607, 18 U.S.C. § 1962(a), (c) and (d) (RICO), as well as common law theories of trespass, nuisance, conversion, quantum meruit, negligence, and gross negligence.

2. KCC seeks to recover the damages including the costs of the removal of hundreds of thousands of tons of soil defendants and their agents deposited on the property KCC owns in Harris County, Texas. Plaintiff further seeks damages for the loss of use, the damages to the value of its land, contamination caused by altering the flood plain, flood table and drainage, and exemplary damages stemming from the trespass, conversion, quantum meruit, reckless and grossly negligent conduct of defendants. Further, KCC was cited by city of Houston for multiple violations for "developing" the land where Defendants were dumping their soil. Further, KCC seeks

restraining orders and orders requiring Defendants to take such actions as the Court may deem necessary to cure the damage to Plaintiff's land and water within the property.

3. As explained further below, defendant's business practices involved a pattern of racketeering activities whereby defendant Triple B would engage with other defendants such as Big R Trucking, LLC, Juan Luis Barba, Raul Barba, J. Martinez Trucking, and other as yet unidentified trucking companies whereby Triple B would charge land developers with whom it was contracting for removal and disposal of soil excavated from the projects; instead of dumping at the place where permitted or contracted for, defendants secretly dumped the evacuated soil to various dump sites without permits or consent where they would dump the evacuated soil without having to pay a disposal fee, making a windfall profit for the difference in distance travelled between plaintiff's land and the original disposal site and the fee required to dump the soil fraudulently. Triple B had masterminded the activities with the full knowledge of defendant

truck drivers, who were co-conspirators in the illegal dumping of earth.

## II. JURISDICTION AND VENUE

4. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1367, 42 U.S.C. §§ 9607(a), 9613(b), and 18 U.S.C. § 1962(a), (c) and (d) (RICO).

5. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 on the basis that the facts of both the federal and state causes of action all arise from the same set of operative facts.

6. The Court has personal jurisdiction over each of the defendants, and all of them collectively.

7. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b), (c), § 1395(a), and 42 U.S.C. § 9613(b) because each of the acts, omissions, or conditions giving rise to the suit happened in Harris County, Texas.

## III. PARTIES

8. Plaintiff Kam Chu Cheng dba KCC is an individual living in Harris County, Texas.

9. Defendant Triple B Services, LLP ( "Triple B" ) is a limited liability partnership organized under the laws of the State of Texas. Defendant contracted with Defendant Ashlar to construct and clear land for Ashlar's housing development, and with John Doe truck drivers to move the earth resulting from the construction to a disposal facility. Therefore Triple B is a responsible party under 42 U.S.C. §9613(b).

10. Defendant Ashlar Development, LLC ( "Ashlar" ) is a foreign Limited Liability Company organized under the laws of the State of Delaware and registered with the Texas Secretary of State to do business in the State of Texas. Defendant Ashlar contracted with Defendant Triple B for the removal of the soil from its property and as such constitutes a potentially responsible party under 42 U.S.C. §9613(b).

11. Defendant John Does 1 -100, whose identities are discoverable and are to be added as parties later, are unnamed individuals who were subcontractors and/or agents of defendant Triple B and Ashlar Development. The John Does owned and

operated dump trucks to transport the soil to KCC' s property as described in this petition. Defendants transported and dumped the soil, which damage Plaintiff' s property as in paragraph #2, described above.  Defendant John Doe truck drivers are potentially responsible parties under 42 U.S.C. § 9613(b).

12. Defendant J. Martinez Trucking is a common carrier operating as a partnership, authorized as a motor carrier by both the United States and Texas Departments of Motor Vehicles.  J. Martinez Trucking was a subcontractor and agent of Triple B and Ashlar that actively transported and dumped the earth on Plaintiff' s property as described in paragraph #2, which is incorporated by reference. Defendant J. Martinez Trucking is a potentially responsible party under 42 U.S.C. § 9613(b).

13. Defendant Raul Barba, Jr. is a common carrier operating as a sole proprietorship, authorized as a motor carrier by both the United States and Texas Departments of Motor Vehicles.  Defendant Raul Barba, Jr. was involved as a subcontractor and agent of Triple B and Ashlar who actively transported and dumped the earth on

plaintiff's property as described in paragraph #2, which is incorporated by reference. Defendant Raul Barba, Jr. is a potentially responsible party under 42 U.S.C. § 9613(b).

14. Defendant Juan Luis Barba is a common carrier operating as an owner and sole proprietorship, authorized as a motor carrier by both the United States and Texas Departments of Motor Vehicles. Defendant Juan Luis Barba was involved as a subcontractor and agent of Triple B and Ashlar who actively transported and dumped the earth on plaintiff's property as described in paragraph #2, which is incorporated by reference. Defendant Juan Luis Barba is a potentially responsible party under 42 U.S.C. § 9613(b).

15. Defendant BIG R TRUCKING, LLC. is a common carrier operating as a corporation, authorized as a motor carrier by both the United States and Texas Departments of Motor Vehicles. Defendant BIG R TRUCKING, LLC. was involved as a subcontractor and agent of Triple B and Ashlar who actively transported and dumped the earth on plaintiff's property. Defendant BIG R TRUCKING, LLC. is a potentially responsible party under 42 U.S.C. § 9613(b).

16.    Defendant ALL ROAD TRANSPORT, LLC is a common carrier operating as a corporation, authorized as a motor carrier by both the United States and Texas Departments of Motor Vehicles.  Defendant All Road Transport, LLC was involved as a subcontractor and agent of Triple B and Ashlar who actively transported and dumped the earth on plaintiff's property.  Defendant All Road Transport, LLC is a potentially responsible party under 42 U.S.C. § 9613(b).

17.    Defendant BRUNO R. LUIS is a common carrier operating as a corporation, authorized as a motor carrier by both the United States and Texas Departments of Motor Vehicles.  Defendant Bruno R. Luis was involved as a subcontractor and agent of Triple B and Ashlar who actively transported and dumped the earth on plaintiff's property.  Defendant Bruno R. Luis is a potentially responsible party under 42 U.S.C. § 9613(b).

18.    Defendant DANNY ARJONA is a common carrier operating as a corporation, authorized as a motor carrier by both the United States and Texas Departments of Motor Vehicles.  Defendant Danny Arjona was involved as a subcontractor and agent of Triple B

and Ashlar who actively transported and dumped the earth on plaintiff's property.  Defendant Danny Arjona is a potentially responsible party under 42 U.S.C. § 9613(b).

19.  Defendant DAVID VELA is a common carrier operating as a corporation, authorized as a motor carrier by both the United States and Texas Departments of Motor Vehicles.  Defendant David Vela was involved as a subcontractor and agent of Triple B and Ashlar who actively transported and dumped the earth on plaintiff's property.  Defendant David Vela is a potentially responsible party under 42 U.S.C. § 9613(b).

20.  Defendant GILBERTO LUIS is a common carrier operating as a corporation, authorized as a motor carrier by both the United States and Texas Departments of Motor Vehicles.  Defendant Gilberto Luis was involved as a subcontractor and agent of Triple B and Ashlar who actively transported and dumped the earth on plaintiff's property.  Defendant Gilberto Luis is a potentially responsible party under 42 U.S.C. § 9613(b).

21. Defendant MTZ TRUCKING, INC. is a common carrier operating as a corporation, authorized as a motor carrier by both the United States and Texas Departments of Motor Vehicles. Defendant MTZ Trucking, Inc. was involved as a subcontractor and agent of Triple B and Ashlar who actively transported and dumped the earth on plaintiff's property. Defendant MTZ Trucking, Inc. is a potentially responsible party under 42 U.S.C. § 9613(b).

22. Defendant PEDRO AMAYA, DBA SANTA FE TRUCKING is a common carrier operating as a corporation, authorized as a motor carrier by both the United States and Texas Departments of Motor Vehicles. Defendant Pedro Amaya, dba Santa Fe Trucking was involved as a subcontractor and agent of Triple B and Ashlar who actively transported and dumped the earth on plaintiff's property. Defendant Pedro Amaya, dba Santa Fe Trucking is a potentially responsible party under 42 U.S.C. § 9613(b).

23. Defendant ESTEBAN REQUENA, DBA TRANSPORT REQUENA A is a common carrier operating as a corporation, authorized as a motor carrier by both the United States and Texas Departments of

Motor Vehicles. Defendant Esteban Requena, dba Transport Requena A was involved as a subcontractor and agent of Triple B and Ashlar who actively transported and dumped the earth on plaintiff's property. Defendant Esteban Requena, dba Transport Requena A is a potentially responsible party under 42 U.S.C. § 9613(b).

## IV. Environmental Statutory Scheme

24.    Plaintiff KCC re-alleges and incorporates by reference paragraphs 1 through 23 of this Complaint.

25.    The Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901-6992 was passed in 1976. Under 42 U.S.C. 6901, one of the primary purposes of the Act was:

> …the collection and disposal of solid wastes should continue to be primarily the function of State, regional, and local agencies, the problems of waste disposal as set forth above have become a matter national in scope and in concern and necessitate Federal action through financial and technical assistance and leadership in the development, demonstration, and application of new and improved methods and processes to reduce the amount of waste and unsalvageable materials and to provide for proper and economical solid waste disposal practices," and disposal of solid waste and hazardous waste in or on the

land without careful planning and management can present a danger to human health and the environment.

26. Under 42 U.S.C. § 6972 (a)(1)(B) "..any person may commence a civil action on his own behalf — against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."

27. Under 42 U.S.C. § 9613(f)(1) "Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the

Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

## V. COUNT 1 – RCRA VIOLATIONS

28. Plaintiff KCC re-alleges and incorporates by reference paragraphs 1 through 27 of this Complaint.

29. This action arises under the laws of the United States. Without the permission or effective consent of KCC, on or about October 6, 2016, at Moonshine Hill, Houston, Harris County Texas, and Belleau Wood, Houston, Harris County, Texas, TRUCK DRIVERS began dumping enormous amounts of dirt on Harris County Appraisal District ("HCAD") parcel numbers 042077000002 and 0420770000283, both of which Plaintiff owns, and has owned during the periods pertinent to this action ("Plaintiff's Land").

30. Defendant Ashlar contracted with Defendant Triple B to clear the land and construct the roads and other amenities in The Grove. As part of its obligations with Ashlar, Triple B was to remove the excavated earth and take it to an authorized dump site in Liberty County, Texas. Triple B contracted with numerous John Does to remove the excavated earth and transport the earth to the authorized site.

31. Defendant Ashlar, and or its agents excavated the dirt it dumped on plaintiff's land from a nearby construction site where Ashlar was building The Grove, a master planned community in northeast Harris County, Texas.

32. Instead, Triple B directed the drivers to begin dumping or negligently or recklessly allowed the defendants-drivers to illegally dump the earth on Plaintiff's Land. Thus, they dumped hundreds of thousands of cubic yards of soil at KCC's property, creating vast mounds of soil built up to over 40 feet high. This soil altered the subject property with respect to the flood plain or flood-way, causing the flood water to build up quickly during the Hurricane Harvey and

other heavy downfalls, allowing spilled waste oil to filter outside the oil tank protective dike which surrounded the oil tanks and oil pumps located within the boundary of KCC's subject property. The overflowing of the oils accumulated within the dike, and destroying the oil tanks piping due to the floatation of the tanks because of the floodwater or rainwater causes heavy spilling of the oil stored within the tank and the dike due to the buoyancy of the tank, and thus contaminated the KCC's soil and water around.

33.    As a result of this illegal dumping, the City of Houston has cited Plaintiff, and compelled KCC to cease all activity on Plaintiff's Land, thus halting KCC's development of the property for commercial fish farming.  At the northern end of the property, some of the dumped dirt as migrated into a public water way.

34. Plaintiff was unaware of the dumping until the City of Houston contacted it.  At no time did KCC consent to the defendants dumping of soil in this huge quantity.

35. Wherefore, Plaintiff requests contribution for any and all associated costs for cleanup of the earth from Plaintiff's property,

restore the topography of the land and pond within the property, together with any and all incidental damages, costs of court, interest, and any other relief the Court finds reasonable under the circumstances. *The Plaintiff requests a trial by jury.*

## VI.     COUNT 2 – RICO VIOLATION

36.     Plaintiff KCC re-alleges and incorporates by reference paragraphs 1 through 35 of this Complaint.

37.     Plaintiff and Defendants are all natural persons or legal entities, and as such are "persons" within the meaning of 18 U.S.C. § 1961(3).

38.     At all times, Defendants did acquire and/or maintain, directly or indirectly, an interest, in or control of, a RICO enterprise of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961 (4),(5),(9), and 1962(b).

39.     Defendant Triple B entered into a contract with Defendant Ashlar to construct or assist in the construction of a master planned community called the Groves in Northeast Harris County, Texas.  Part

of the contract involved the clearing of land and removal of earth to allow for the building of roads and other amenities in the community. With or without the knowledge of Ashlar, Triple B engaged with various trucking companies to remove the earth from the site and transport it to a proper disposal site. With or without the knowledge of defendant Ashlar, defendant Triple B directed defendant truck drivers to illegally dump the earth on plaintiff's property instead of transporting the earth to an authorized site, thereby eliminating the need to pay disposal fees for the earth being removed from **"The Groves"** community.

40. Defendants involves with pattern racketeering by contracting real estate development projects, Defendant Triple B will then represented to the real property developer that Triple B will find a permitted dump site to dump the soil. Triple B then hire other contracted dump trucks to located sites without consent of the owners and secretly dumps their soils to these tracts using these contracted drivers to complete the illegal dumping, therefore committed the CIVIL RICO violation PURSUANT TO § 1962(a) against

Triple B and the contracted truck drivers. Plaintiff alleges this is a continuing practice and pattern of practice whereby defendant Triple B engages in the use of non-authorized sites to dispose of earth removed from its construction projects with having to pay for disposal fees while at the same time charging those same fees to its clients, thereby committing fraud against its customers. Defendant Triple B engages in and uses the defendant truck drivers to effectuate its fraudulent schemes, and defendant truck drivers are aware that their conduct is used in the furtherance of this fraudulent scheme in that they were aware they were not supposed to be dumping the earth on plaintiff's property. Indeed, several of the truck drivers continued to dump earth on plaintiff's property after being informed it was prohibited by City of Houston inspectors. Defendants are all natural persons or legal entities, and as such are "persons" within the meaning of 18 U.S.C. § 1961(3). The activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5). Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to

further the schemes described above. Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(a), (b) and (c), in violation of 18 U.S.C. § 1962(d).

41. At the same time defendant Triple B has damaged plaintiff in the course of its RICO violations by causing to be dumped on Plaintiff's land hundreds of thousands of cubic yards of soil, damaging plaintiff's property as described in the paragraph 2 above. As a result, plaintiff has been cited by the City of Houston, and the City has banned plaintiff from using the land until the earth has been removed. This dumping has thus damaged plaintiff economically, forcing plaintiff to have to hire counsel in order to prosecute this claim.

42. As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiff has been injured in their business, specifically, severe economic losses resulting in the total loss of its property value and business. Wherefore, Plaintiff demands damages for lost rent, lost profits, and lost money due to service provided and accepted and all associated costs for

cleanup of the soil from Plaintiff's property, together with any and all incidental damages, costs of court, interest, and any other relief the Court finds reasonable under the circumstances. *The Plaintiff requests a trial by jury.*

## VII. COUNT 3 – TRESSPASS

43. Plaintiff KCC re-alleges and incorporates by reference paragraphs 1 through 42 of this Complaint.

44. Defendant truck drivers trespassed on land owned by the plaintiff by intentionally driving dump trucks onto Plaintiff's Land and dumping enormous amounts of earth on the property.

45. At all relevant times defendant dump truck drivers were agents of defendants Triple B and Ashlar.

46. Defendant truck drivers entered the property through Moonshine Hill road, drove through a gate onto the property of plaintiff, down the drive, and then proceeded to dump the contents of their trucks on plaintiff's property, thereby damaging plaintiff. Said entry was voluntary and intentional.

47. Defendant Triple B was aware of the dumping on the

properties of plaintiff and did nothing to stop the illegal and tortious conduct of the defendant truck drivers. Defendant Triple B engaged in knowing trespass on plaintiff's properties.

48. The dumping of the land caused enormous injury to the plaintiff, requiring him to have to be required to remove the soils and restore the topography of the land. The illegal dumping has caused the Plaintiff with multiples fines and penalties that is measured in daily basis fined by the City of Houston. These fines are still pending until the soil is removed from the property. City of Houston has now prevented the Plaintiff from enjoying his full rights of possession in the property, including renting it for commercial fishing at the site.

49. Wherefore, Plaintiff requests contribution for any and all associated costs for cleanup of the contaminated soil, removed the illegal dumped soil on Plaintiff's property, together with any and all incidental damages, costs of court, interest, and any other relief the Court finds reasonable under the circumstances. *The Plaintiff requests a trial by jury.*

## VIII.   COUNT 4 – NUISANCE

50. Plaintiff KCC re-alleges and incorporates by reference paragraphs 1 through 49 of this Complaint.

51. Defendants, by dumping earth on Plaintiff's property interfered with plaintiff's interests in the property. Such interference was intentional and unreasonable. In the alternative, such conduct was negligent and grossly negligent.

52. The dumping of the earth on plaintiff's property resulted in mountains of soil accumulating on plaintiffs property, changing the topography of the land and altering the flood plain that would spread the contaminated oil into the Plaintiff land and water, altering the topography of the land within the Plaintiff's property, causing fines and penalty cited by City of Houston.

53. Plaintiff had been renting the land to a commercial farming entity at the ponds within the property. The commercial activities are entirely stopped due to the city of Houston prohibition of any development without removing the soil dumped and the contamination spilled in the pond.

54.    As a result, the City of Houston has issued a cease and desist order on the property to prevent any further action by plaintiff until the property is restored to the same condition as prior to the dumping.

55.    Plaintiff has been damaged by the dumping of the earth in that it can no longer move forward with its business plans until the property is restored to its condition before the earth was dumped on it.  Plaintiff is going to have to spend enormous amounts of money to have the earth removed, and has been unable to move forward until the site condition is restored.

56.    Wherefore, Plaintiff requests contribution for any and all associated costs for cleanup of the earth from Plaintiff's property, together with any and all incidental damages, costs of court, interest, and any other relief the Court finds reasonable under the circumstances.  *The Plaintiff requests a trial by jury.*

## IX. COUNT 5 – NEGLIGENCE

57.    Plaintiff KCC re-alleges and incorporates by reference paragraphs 1 through 56 of this Complaint.

58. Defendant Truck Drivers had a duty to know where to properly dispose of the earth from the construction project they had removed from the construction site and were transporting.

59. Defendant Triple B had a duty to inform defendant truck drivers where to properly dispose of the earth from the construction site and a further duty to ensure that the earth was disposed of at the required site.

60. Defendant truck drivers breached their duty to properly dispose of the earth by dumping the earth on the plaintiff's property. Such a breach was the direct and proximate cause of the damage to the plaintiff's property.

61. Defendant Triple B breached its duty to by failing to inform its contracted dump truck drivers where to properly dispose of the earth removed from the construction site and failing to ensure that the truck drivers did dispose of the earth properly at that location. Such a breach was the direct and proximate cause of the damage to plaintiff's property.

62.     Wherefore, Plaintiff requests contribution for any and all associated costs for cleanup of the earth from Plaintiff's property, together with any and all incidental damages, costs of court, interest, and any other relief the Court finds reasonable under the circumstances.  *The Plaintiff requests a trial by jury.*

## X.     COUNT 6 – GROSS NEGLIGENCE

63.     Plaintiff KCC re-alleges and incorporates by reference paragraphs 1 through 62 of this Complaint.

64.     Each Defendant had a duty to know where to properly dispose of the earth from the construction project they had removed from the construction site and were transporting.

65.     Each defendant had a duty to inform one another where to properly dispose of the earth from the construction site and a further duty to ensure that the earth was disposed at the correct site.

66.     Defendants breached their duty to properly dispose of the earth by dumping the earth on Plaintiff's Land.  The breach was the direct and proximate cause of the damage to the plaintiff's property.

67. Defendants' actions involved an extreme degree of risk when considering the probability and magnitude of harm that might be caused to Plaintiff's Land.

68. Defendants knew of the risk involved by acted anyway in a conscious indifference of the rights and safety or welfare of others.

69. Wherefore, Plaintiff requests contribution for any and all associated costs for cleanup of the earth from Plaintiff's property, together with any and all incidental damages, costs of court, interest, and any other relief the Court finds reasonable under the circumstances. *The Plaintiff requests a trial by jury.*

## XI. COUNT 7 – CONVERSION

60. Plaintiff KCC re-alleges and incorporates by reference paragraphs 1 through 69 of this Complaint.

71. Plaintiff owned the following personal property: 2 tracts of property over 65 acres, together with the roads, gates, locks, and various other amenities which plaintiff had on the property.

72. Defendant wrongfully acquired and exercised dominion

and control over plaintiff's right to receive compensation for soil wrongfully and without effective consent, unload at the Plaintiff's tract of land. Defendant truck drivers entered the plaintiff's property through Moonshine Hill road, drove through a gate onto the property of plaintiff, down the drive, and then proceeded to dump the hundreds of thousands of truckloads of soil of their trucks on plaintiff's property, and then usurp the compensation that rightfully belongs to the Plaintiff, thereby damaging plaintiff. Said exercise the dominion of money or compensation received was intentional and with malice.

73. Defendant's wrongful acts proximately caused injury to plaintiff, resulting in the following damages: the windfall profits of receiving unjust compensation or unjust enriched for not having to pay the dumping charges for these hundreds of thousands of loads of soil by illegally dumping at the Plaintiff property. Alternatively the receiving of part or all the money or profits that is not rightfully belonged to the Defendant is a tort of conversion. Plaintiff requests such profits or money received without justification or unlawfully

enriched is the act of conversion. Money converted from the Plaintiff was done with Defendant and Defendant agent intentionally trespassing the land and dumping this enormous amount of soil at the Plaintiff's property without just compensation. These unjust profits, and the consequential loss or the associated costs for removing the soil from the site from Plaintiff's property, together with any prejudgment interest, costs of court, and any other relief the Court finds reasonable under the circumstances. *The Plaintiff requests a trial by jury.*

## XII. COUNT 8 – QUANTUM MERUIT

74. Plaintiff KCC re-alleges and incorporates by reference paragraphs 1 through 73 of this Complaint.

75. Plaintiff unknowingly and without effective consent, provided defendants with a location that defendants could utilize to dump large quantities of earth at a no cost and transport the same loads of soil at a no cost or lower cost by moving these hundreds of Thousands of soil to a no cost, or shorter distance or route, allowing defendants to earn additional windfall profit and time in disposing of

the soil removed from the Grove community Development project "the Project". Defendant intentionally use and accepted the site by dumping hundreds of thousands of cubic yards of soil on the Plaintiff tracts of land over a period of several weeks.

76. Defendant used the Plaintiff's tracts for soil disposal site for defendant's benefit. Defendant's spent considerable time and effort to dump the soil on Plaintiff's land, and then hide the evidence by using bulldozers to level the mounts of soil wrongfully dumped at Plaintiff's property.

77. Defendant knew or should have known that plaintiff expected compensation when defendant accepted the services. Upon information and belief, plaintiff alleges Defendants had previously contracted with another landowner for disposal of the soil similar to the situation here and knew that disposing of the earth would require the knowledge, consent, and compensation of the landowner where the earth would be deposited.

78. Because Defendants knows Defendants are expected to compensate the Plaintiff for the soil dumped at the Plaintiff's tracts

of land. Defendant's acceptance of the services without justly compensate the Plaintiff causes the following damages: loss of the disposal fees required which should have been paid to plaintiff for the use of its land. Defendants are required compensate the profit or money usurped from the Plaintiff, including the costs of removing the soil to restore the property as before required by the City of Houston. Plaintiff seeks other reliefs which the Court finds reasonable under the circumstances. *Plaintiff requests a trial by jury.*

## XIII. DAMAGES

79. Plaintiff KCC re-alleges and incorporates by reference paragraphs 1 through 78 of this Complaint.

80. Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court. Plaintiff's land has been damaged by the deposit of thousands of loads of soil on it. Plaintiff will be required to spend enormous amounts of money to pay for the removal of the earth to restore the topography of the tracts of land in order to avoid penalty for development without a permit. Plaintiff

has further been damaged by its loss of the rent for unable to use the land for commercial farming on the property.

a. Award compensatory, consequential, exemplary and punitive damages to Plaintiff in an amount to be determined at trial.

b. Award attorneys' fees and costs to Plaintiff;

c. For prejudgment interest at the highest rate allowed by law;

d. For post-judgment interest as provided by law at the highest rate allowed;

e. Constructive trust in favor of Plaintiff for the converted and/or fraudulently money received and deposited and transferred that is owed to Plaintiff for the paying no compensation or reduce costs of dumping the enormous loads of soil;

f. Disgorgement of profits and benefits received;

g. Declaratory or injunctive relief to enforce Plaintiff's rights;

h. For Plaintiff's lost profits and loss of rent and use of the property;

i. For all costs of court and out-of-pocket expenses incurred herein; and

j. For such other and further relief at law and in equity to which the Plaintiff may show itself justly entitled.

81. Plaintiff's injury resulted from defendants' intentional conduct, malice, or fraud, which entitles plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a). Defendants intentionally dumped thousands of cubic yards of earth on plaintiff's property, knowingly altering the landscape of plaintiff's property, subjecting the plaintiff's to potential fines and penalties, and deprived plaintiff of the very use of the property, effectively condemning the property from plaintiff.

*The Plaintiff requests a trial by jury.*

## *Prayer for Relief*

WHEREFORE, Plaintiff prays that Defendants be cited to appear and answer, and the following order be entered that includes the following relief:

1. For general and special damages according to proof;

2. For consequential damages;

3. For costs of suit incurred herein;

4. For treble, punitive and exemplary damages;

5. Reasonable and necessary attorneys' fees as available under State or federal law and costs;

6. For pre- and post-judgment interest as allowed by law;

7. For all injunctive relief requested;

8. and for such other and further relief as this Court deems proper.

Respectfully Submitted

Siegel, Yuen, & Honore, PLLC

BY: __/s/ Kenneth Royce Barrett__
Kenneth Royce Barrett
SDTX: 12045

]

State Bar No. 01812200
KennethRoyceBarrettLaw@Yahoo.com
Byron Hamilton
State Bar No. 00787633
FordHamiltonatty@gmail.com [email]

6100 Corporate Dr., Suite 580,
Houston, Texas 77036
(713) 541-6256 [telephone]
(713) 541-9409 [facsimile]

27 September 2018