United States District Court
Southern District of Texas
**ENTERED**
July 08, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| XENOS YUEN, AS TRUSTEE FOR | § | |
| KAM CHU CHENG, d/b/a KCC | § | |
| ENTERPRISES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-18-3277 |
| | § | |
| TRIPLE B SERVICES LLP, ASHLAR | § | |
| DEVELOPMENT, LLC, BIG R TRUCKING, | § | |
| LLC, JUAN LUIS BARBA, RAUL | § | |
| BARBA, JR., J. MARTINEZ TRUCKING, | § | |
| and JOHN DOE TRUCK DRIVERS 1-100, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending in this case that has been referred to the undersigned Magistrate Judge for all further pretrial proceedings is Defendant Triple B Services, LLC's Partial Motion to Dismiss (Document No. 13), Defendants Juan Luis Barba, Raul Barba, Jr., Martines Trucking, Danny Arjona, David Vela, MTZ Trucking, Inc., Big R Trucking, LLC, and Esteban Requena d/b/a Transport Requena A.'s Motion to Dismiss Plaintiff's Complaint (Document No. 23), Defendant Ashlar Development, LLC's Rule 12(b)(6) Motion to Dismiss (Document No. 25), and Defendant Pedro Amaya d/b/a Santa Fe Trucking's Motion to Dismiss (Document No. 49). Having considered those motions, Plaintiff's responses, the allegations and claims in Plaintiff's Second Supplemental Complaint (Document No. 52), and the parties' agreement and acknowledgment at the Status Conference held on May 1, 2019, that the Motions to Dismiss address the allegations and claims in the subsequently filed "Second Supplemental Complaint," and the applicable law, the Magistrate RECOMMENDS, for the reasons set forth below, that Defendants' Motions to Dismiss (Document Nos. 13, 23,25 and

49) all be GRANTED, that Plaintiff's federal claims under the Racketeering Influenced and Corrupt

Organizations Act (RICO) and the Resource Conservation and Recovery Act/Comprehensive

Environmental Response, Compensation and Liability Act (RCRA/CERCLA) be DISMISSED

pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim, and that the Court DECLINE to

exercise supplemental jurisdiction over the remaining state law claims.

## I.    Background

This case is based on alleged damage to Plaintiff's property by virtue of the unauthorized

dumping by Defendants of large quantities of dirt/soil on that property. Plaintiff alleges in the

Second Supplemental Complaint that it seeks

> to recover the damages including the costs of the removal of hundreds of thousands
> of tons of soil defendants and their agents deposited on the property [Plaintiff] owns
> in Harris County, Texas. Plaintiff further seeks damages for the loss of use, the
> damages to the value of its land, contamination caused by altering the flood plain,
> flood table and drainage, and exemplary damages stemming from the trespass,
> conversion, quantum meruit, reckless and grossly negligent conduct of defendants.

(Document No. 54 at 2). According to Plaintiff, Defendant Ashlar Development, LLC ("Ashlar")

is the developer of a master planned community in northeast Harris County, Texas, known as "The

Grove"; Ashlar contracted with Triple B Services LLC ("Triple B") "to clear the land and construct

the roads and other amenities in The Grove"; "As part of its obligations with Ashlar, Triple B was

to remove the excavated earth and take it to an authorized dump site in Liberty County"; instead of

taking the excavated earth to an authorized dump site in Liberty County, Triple B "directed the

drivers to begin dumping or negligently or recklessly allowed the defendant-drivers to illegally dump

the earth on Plaintiff's land"; this unauthorized dumping consisted of "hundreds of thousands of

2

cubic yards of soil at [Plaintiff's] property, creating vast mounds of soil built up to over 40 feet high"; "[t]his soil altered the subject property with respect to the flood plain or flood-way, causing flood water to build up quickly during Hurricane Harvey and other heavy downfalls, allowing spilled waste oil to filter outside the oil tank protective dike which surrounded the oil tanks and oil pumps located within the boundary of [Plaintiff's] [ ] property"; and that the "overflowing of the oils accumulated within the dike" and the destruction of "the oil tanks piping due to the flotation of the tanks" resulted in the contamination of Plaintiff's soil and the surrounding public water way(s). Plaintiff's Second Supplemental Complaint (Document No. 54) at 19-20.[1] Plaintiff asserts claims against Defendants for: (1) violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq., and/or the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq.; (2) violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO), 18 U.S.C. § 1961, et seq.; (3) trespass; (4) nuisance; (5) negligence; (6) gross negligence; (7) conversion; and (8) quantum meruit. Defendants seek the dismissal of the RCRA and RICO claims on the basis that Plaintiff has failed to state a claim for which relief may be granted. Several of the Defendants also argue that the Court should, in the absence of a plausible federal claim, decline to exercise supplemental jurisdiction over the remaining state law claims. All briefing on the pending Motions to Dismiss is complete and the parties agree that the arguments and issues to be decided in connection with the Motions to Dismiss survive the

---

[1] On May 1, 2019, Plaintiff's Opposed Motion for Leave to File Supplemental Complaint was granted, and Plaintiff's "Second Supplemental Complaint" (Document No. 54) was deemed filed. While that pleading is titled a "Supplemental Complaint," it is, for all intents and purposes, an amended complaint, as it names/identifies additional defendants, but re-states almost verbatim, the allegations and claims contained in the Original Complaint (Document No. 1).

subsequent filing of Plaintiff's "Second Supplemental Complaint" (Document No. 54).

## II.     Rule 12(b)(6) Standard of Review

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Plausibility will not be found where the claim alleged in the complaint is based solely on legal conclusions, or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Nor will plausibility be found where the complaint "pleads facts that are merely consistent with a defendant's liability" or where the complaint is made up of "'naked assertions devoid of further factual enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557)). Plausibility, not sheer possibility or even conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556-557; *Iqbal*, 129 S.Ct. at 1950-1951.

In considering a Rule 12(b)(6) motion to dismiss, all well pleaded facts are to be taken as true, and viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). But, as it is only *facts* that must be taken as true, the court may "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950. It is only then that the court can view the well pleaded *facts*,

4

"assume their veracity and [ ] determine whether they plausibly give rise to an entitlement to relief."
*Id.* at 1950.

### III.     Discussion - Federal claims (RICO and RCRA)

This case was filed in this Court, with subject matter jurisdiction being premised on
Plaintiff's assertion of two federal claims – a RCRA claim and a RICO claim.  Defendants all argue
in their respective Motions to Dismiss that Plaintiff has not, and cannot, state a plausible RCRA
claim or a plausible RICO claim.  For the reasons that follow, the Magistrate Judge agrees.

####     A.     RCRA/CERCLA Claim

The Resource Conservation and Recovery Act (RCRA) provides that "any person may
commence a civil action on his own behalf—against any person, including the United States and any
other governmental instrumentality or agency, to the extent permitted by the eleventh amendment
to the Constitution, and including any past or present generator, past or present transporter, or past
or present owner or operator of a treatment, storage, or disposal facility, *who has contributed or who
is contributing to* the past or present handling, storage, treatment, transportation, or disposal of any
solid or hazardous waste which may present an imminent and substantial endangerment to health or
the environment." 42 U.S.C. § 6972(a)(1)(B) (emphasis added). "[T]o  prevail on 'contributing to'
claim under [RCRA], [a] plaintiff is required to demonstrate: (1) that defendant is a person,
including, but not limited to, one who was or is generator or transporter of solid or hazardous waste
or one who was or is owner or operator of solid or hazardous waste treatment, storage, or disposal
facility; (2) that defendant has contributed to or is contributing to handling, storage, treatment,
transportation, or disposal of solid or hazardous waste; and (3) that solid or hazardous waste may

present imminent and substantial endangerment to health or environment." *Cox v. City of Dallas, Tex.*, 256 F.3d 281 (5th Cir. 2001).

The Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) was enacted to promote the "timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Burlington Northern and Santa Fe Ry. Co. v. U.S.*, 556 U.S. 599, 602 (2009). CERCLA liability applies to "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances." 42 U.S.C. § 9607(a)(3). "[A]n entity may qualify as an arranger . . . when it takes intentional steps to dispose of a hazardous substance. *Burlington Northern*, 556 U.S. at 611.

The allegations in Plaintiff's Second Supplemental Complaint supporting the RCRA claim are as follows:

58.     . . . Without the permission or effective consent of [Plaintiff], on or about October 6, 2016, at Moonshine Hill, Houston, Harris County Texas, and Belleau Wood, Houston, Harris County, Texas, TRUCK DRIVERS began dumping enormous amounts of dirt on Harris County Appraisal District ("HCAD") parcel numbers 042077000002 and 0420770000283, both of which Plaintiff owns, and has owned during the periods pertinent to this action ("Plaintiff's Land").

59.     Defendant Ashlar contracted with Defendant Triple B to clear the land and construct the roads and other amenities in The Grove. As part of its obligations with Ashlar, Triple B was to remove the excavated earth and take it to an authorized dump site in Liberty County, Texas. Triple B contracted with numerous John Does to remove the excavated earth and transport the earth to the authorized site.

60.     Defendant Ashlar, and or its agents[,] excavated the dirt it dumped on plaintiff's land from a nearby construction site where Ashland was building The

6

Grove, a master planned community in northeast Harris County, Texas.

61.     Instead, Triple B directed the drivers to begin dumping or negligently or recklessly allowed the defendant[]-drivers to illegally dump the earth on Plaintiff's Land. Thus, they dumped hundreds of thousands of cubic yards of soil at [Plaintiff's] property, creating vast mounds of soil built up to over 40 feet high. This soil altered the subject property with respect to the flood plain or flood-way, causing the flood water to build up quickly during [ ] Hurricane Harvey and other heavy downfalls, allowing spilled waste oil to filter outside the oil tank protective dike which surrounded the oil tanks and oil pumps located within the boundary of [Plaintiff's] property.   The overflowing of the oils accumulated within the dike, and [sic] destroying the oil tanks piping due to the flotation of the tanks because of [sic] the floodwater or rainwater causes heavy spilling of the oil stored within the tank and the dike due to the buoyancy of the tank, and thus contaminated [Plaintiff's] soil and water around.

62.     As a result of this illegal dumping, the City of Houston has cited Plaintiff, and compelled [Plaintiff] to cease all activity on Plaintiff's Land, thus halting [Plaintiff's] development of the property for [a] commercial fishing farm. At the northern end of the property, some of the dumped dirt [has] migrated into a public water way.

63.     Plaintiff was unaware of the dumping until the City of Houston contacted it. At no time did [Plaintiff] consent to the defendants['] dumping of soil in this huge quantity.

64.     Wherefore, Plaintiff requests contribution for any and all associated costs for cleanup of the earth from Plaintiff's property, [and] restore the topography of the land and pond within the property, together with any and all incidental damages, costs of court, interest, and any other relief the Court finds reasonable under the circumstances.

Plaintiff's Second Supplemental Complaint (Document No. 54) at 19-20. Although it is not entirely clear whether Plaintiff seeks to pursue a claim under both RCRA and CERCLA,[2] both claims are not plausible. First, there are no allegations that Defendants handled, stored, treated, transported, or disposed of any solid or hazardous waste. The allegations in Plaintiff's Second Supplemental

---

[2] In the Second Supplemental Complaint, CERLCA is mentioned once on page 1, once on page 18, and in the parties' section, alleging that each Defendant is potentially responsible parties under 42 U.S.C. § 9613(b).

Complaint are that Defendants transported and improperly disposed of dirt. There are no allegations that the dirt was, or contained any, hazardous waste. Second, while Plaintiff does allege that the oil stored on its property was affected by Defendants' dumping of the dirt, implying that it was Defendants' conduct which resulted in the spread of what could be considered hazardous waste on Plaintiff's property, nowhere are there any allegations that Defendants undertook any action with respect to that oil or any other hazardous waste such that Defendants could be held liable under RCRA or CERCLA. Because the facts, as alleged by Plaintiff, do not give rise to a claim under RCRA or CERCLA, those claims should be dismissed pursuant to Rule 12(b)(6).

Plaintiff argues, as part of its response(s) to Defendants' Motions to Dismiss, that he should be allowed to amend his pleadings if they are found deficient and/or his RCRA/CERCLA claims are determined not to be plausible on the facts alleged. Under FED. R. CIV. P. 15(a)(2), leave to amend should be freely given "when justice so requires." When a claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies. . . unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Here, there is nothing in the record to suggest that Plaintiff could allege additional facts to state a plausible RCRA/CERCLA claim. Plaintiff alleges that Defendants dumped dirt on Plaintiff's property – nothing more. While Plaintiff argued at the Status Conference that was held on May 1, 2019, that he may discover, through testing he may undertake, that the dirt that was dumped was somehow contaminated, that is not a fact that Plaintiff has, or can, allege at this time. As such, there is no basis for allowing Plaintiff to further amend his pleadings.

8

## B.    RICO Claim

A plaintiff in a civil action may recover damages under the RICO statute, 18 U.S.C. § 1961,

*et seq.*, if he is able to allege and prove: 1) a violation of 18 U.S.C. § 1962(a), (b), (c), or (d), and 2)

injury to business or property as a result of such violation.[3]  18 U.S.C. § 1964(c) ("Any person

injured in his business or property by reason of a violation of section 1962 of this chapter may sue

therefor in any appropriate United States district court . . . ").  Section 1962, as interpreted by the

Fifth Circuit Court of Appeals, provides in its simplest terms, that:

(a)    a person who has received income from a pattern of racketeering activity cannot invest that income in an enterprise;[4]

(b)    a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering activity;[5]

---

[3] The requirement that a RICO plaintiff plead and prove injury as a result of a violation of § 1962 is a standing requirement. *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998) (To have standing to maintain a RICO claim, a plaintiff must be able to plead and prove both injury and causation); *Khurana v. Innovative Health Care Systems, Inc.*, 130 F.3d 143, 147 (5th Cir. 1997)(standing to sue under RICO requires allegations and proof of "(1) a violation of § 1962, (2) an injury to business or property, *and* (3) that his injury was proximately caused by the RICO violation")(emphasis in original, *cert. granted and judgment vacated on other grounds sub nom. Teel v. Khurana*, 119 S. Ct. 442 (1998).  If the plaintiff's injury is not proximately caused by the RICO defendant's substantive violations of § 1962, the plaintiff has no standing to sue under RICO. *Price*, 138 F.3d at 607.

[4] 18 U.S.C. § 1962(a) provides specifically, in pertinent part:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, Title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

[5] 18 U.S.C. § 1962(b) provides:

9

(c)     a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity;[6] and

(d)     a person cannot conspire to violate subsections (a), (b), or (c).

*Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995).  All civil RICO claims require allegations and proof of "1) a *person* who engages in 2) a *pattern of racketeering activity* 3) [which is] connected to the acquisition, establishment, conduct or control of an *enterprise*." *Id.* at 204 (emphasis in original).

A "person", within the meaning of § 1962, "includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3).  To be liable as a "RICO person" under § 1962, however, the defendant must be "one that either poses or has posed a continuous threat of engaging in acts of racketeering." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988), *cert. denied*, 109 S. Ct. 1531 (1989).

A "pattern of racketeering" within the meaning of § 1962 "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5).  In this circuit, "a pattern of racketeering activity" has two elements: "1) predicate acts--the requisite racketeering activity, and 2) a pattern of such acts." *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993).  Predicate acts are delineated in 18 U.S.C. §

---

It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

[6] 18 U.S.C. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt.

1961(1), and include such things as murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, counterfeiting, theft from interstate shipment, embezzlement from pension and welfare funds, extortionate credit transactions, fraud in connection with identification documents, access device fraud, mail fraud, wire fraud, financial institution fraud, and witness tampering. To set out a pattern of predicate acts, a plaintiff must demonstrate that the predicate acts are related and that such acts have some type of continuity. *Id.*

An "enterprise" within the meaning of § 1962 "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). If the plaintiff is alleging an association-in-fact enterprise, there must be allegations and evidence demonstrating "'an ongoing organization, formal or informal, and . . . evidence that the various associates function as a continuing unit.'" *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (quoting *United States v. Turkette*, 101 S. Ct. 2524, 2528 (1981)). "The enterprise is not a pattern of racketeering activity, but must exist separate and apart from the pattern of racketeering activity in which it engages." *Id.* at 229.

Defendants argue, in their respective Motions to Dismiss, that Plaintiff's RICO claim is not plausible because Plaintiff has not pled any predicate acts of racketeering, has not alleged that Defendants derived income from a pattern of racketeering, has not alleged how Defendants were part of any enterprise that was engaged in interstate commerce, and has not alleged how Plaintiff's alleged injury is related to any specific RICO violation. Plaintiff, in response, argues that he has alleged all of the elements of a RICO claim.

The allegations supporting Plaintiff's RICO claim in Plaintiff's live pleading are sparse, and

11

conclusory, at best. As argued by Defendants, there are no facts alleged to support the required pleading elements of a RICO claim. In addition, as is most blatant, there are no facts alleged that would support a plausible predicate act of racketeering. Despite using the words "fraud" and "fraudulent," none of Plaintiff's factual allegations support a plausible predicate act of racketeering based on any type of fraud, and there are no allegations that come close to meeting the heightened pleading requirements for fraud under FED. R. CIV. P. 9(b).

Predicate acts supporting a civil RICO claim, which are based on allegations of fraud, must meet the pleading requirements of FED. R. CIV. P. 9(b). *Tel-Phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138-39 (5th Cir. 1992) (Rule 9(b)'s particularity requirement "applies to the pleading of fraud as a predicate act in a RICO claim"); *Heden v. Hill*, 937 F. Supp. 1230, 1243 (S.D. Tex. 1996) ("[A]llegations of mail fraud and wire fraud must be made with the particularity required by FED. R. CIV. P. 9(b)."); *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1004 (S.D. Tex. 1995) ("Rule 9(b)'s particularity requirement applies to pleading fraud as a predicate act in a RICO claim"). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind may be averred generally." FED. R. CIV. P. 9(b) particularity, at a minimum, requires a plaintiff to allege the time, place, and the contents of the representation upon which the fraud is based, as well as the identity of the person making the representation, and the objective of the fraud. *Tel-Phonic*, 975 F.2d at 1139; *Bonton*, 889 F. Supp. at 1004.

In the civil RICO context, Rule 9(b) also requires the plaintiff to allege specifically how *each* act of mail or wire fraud furthered the fraudulent scheme, who caused what to be mailed or wired when, and how the mailing or wiring furthered the fraudulent scheme. *Heden*, 937 F. Supp. at 1243;

12

*Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) ("Thus, 'loose references to mailings and telephone calls' in furtherance of a purported scheme to defraud will not do. Instead, the plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications.")(citations omitted). In addition, the allegations should "inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Ind., Inc.*, 822 F.2d 1242, 1247 (2nd Cir. 1987); *see also Marriott Brothers v. Gage*, 704 F. Supp. 731, 740 (N.D. Tex. 1988) ("Rule 9(b) also requires that the plaintiffs plead with particularity the representations made by each defendant."), *aff'd*, 911 F.2d 1105 (5th Cir. 1990). It is not enough for the plaintiff to attribute vaguely the alleged fraudulent activity to the "defendants" collectively. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2nd Cir. 1993); *Jepson*, 34 F.3d at 1328-29 (It is improper to lump corporate defendants together "when it comes to attributing acts of mail and wire fraud. . . . [A]bsent a compelling reason, a plaintiff is normally not entitled to treat multiple corporate defendants as one entity."). If predicate acts of fraud are not pled with the particularity required by Rule 9(b), civil RICO claims are subject to dismissal. *See e.g.*, *Ahmad v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997)(failure to plead predicate acts of fraud with particularity is enough to justify dismissal of a civil RICO claim), *cert. denied*, 118 S. Ct. 1165 (1998); *Jepson*, 34 F.3d at 1327-30 (dismissal of a civil RICO claim was proper when plaintiff failed to allege the predicate acts of mail and wire fraud with the required particularity).

Here, the totality of the allegations supporting Plaintiff's RICO claim are as follows:

67.     At all times, Defendants did acquire and/or maintain, directly or indirectly, an interest, in or control of, a RICO enterprise of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961(4),(5), (9), and 1962(b).

68.     Defendant Triple B entered into a contract with Defendant Ashlar to construct or assist in the construction of a master planned community called the Groves in Northeast Harris County, Texas. Part of the contract involved the clearing of land and removal of earth to allow for the building of roads and other amenities in the community. With or without the knowledge of Ashlar, Triple B engaged with various trucking companies to remove the earth from the site and transport it to a proper disposal site. With or without the knowledge of defendant Ashlar, defendant Triple B directed defendant truck drivers to illegally dump the earth on plaintiff's property instead of transporting the earth to an authorized site, thereby eliminating the need to pay disposal fees for the earth being removed from **"The Groves"** community.

69.     Defendants conduct involved a pattern of racketeering by contracting real estate development projects, Defendant Triple B will then represent [ ] to the real property developer that Triple B will find a permitted dump site to dump the soil. Triple B then hired other contracted dump trucks to located sites without consent of the owners and secretly dumps their soils to these tracts using these contracted drivers to complete the illegal dumping, therefore committed the CIVIL RICO violation PURSUANT TO § 1962(a) against Triple B and the contracted truck drivers. Plaintiff alleges this is a continuing practice and pattern of practice whereby defendant Triple B engaged in the use of non-authorized sites to dispose of earth removed from its construction projects with having to pay for disposal fees while at the same time charging those fees to its clients, thereby committing fraud against its customers. Defendant Tripe B engages in and used the defendant truck drivers to effectuate its fraudulent schemes, and defendant truck drivers are aware that their conduct is used in furtherance of this fraudulent scheme in that they were aware they were not supposed to be dumping the earth on plaintiff's property. Indeed, several of the truck drivers continued to dump earth on plaintiff's property after being informed it was prohibited by City of Houston inspectors. Defendants are all natural persons or legal entities, and as such are "persons" within the meaning of 18 U.S.C. § 1961(3). The activity listed above constitutes a pattern of racketeering pursuant to 18 U.S.C. § 1961(5). Defendants knew that their predicate acts were a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(a), (b) and (c), in violation of 18 U.S.C. § 1962(d).

70.     At the same time defendant Triple B has damaged plaintiff in the course of its RICO violations by causing to be dumped on Plaintiff's land hundreds of thousands of cubic yards of soil, damaging plaintiff's property as described in the paragraph 2 above. As a result, plaintiff has been cited by the City of Houston, and the City has banned plaintiff from using the land until the earth has been removed. This dumping has thus damaged plaintiff economically, forcing plaintiff to have to hire counsel in order to prosecute the claim.

71.     As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiff has been injured in their [sic] business, specifically, severe economic losses resulting in the total loss of its property value and business. Wherefore, Plaintiff demands damages for lost rent, lost profits, and lost money due to service provided and accepted and all associated costs for the cleanup of the soil from Plaintiff's property, together with any and all incidental damages, costs of court, interest, and any other relief the Court finds reasonable under the circumstances.

Plaintiff's Second Supplemental Complaint (Document No. 54) at 21-22. These allegations fall far short of Rule 9(b)'s heightened pleading requirements. In addition, given the factual nature of Plaintiff's claims -- that Defendants dumped dirt on Plaintiff's property without authorization -- there is no reasonable likelihood that Plaintiff could factually allege, with the required Rule 9(b) particularity, a *mail* fraud or *wire* fraud claim against Defendants to serve as the predicate acts that would support a RICO claim.[7] Plaintiff, therefore, has not, and cannot, allege a plausible RICO claim, and that claim is, as against all Defendants, subject to dismissal pursuant to FED. R. CIV. P. 12(b)(6).

## IV.   Discussion – Supplemental Jurisdiction

Under 28 U.S.C. § 1367(a),

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

---

[7] Mail fraud and wire fraud require proof of: "(1) a scheme to defraud that employed false material representations, (2) the use of mail or interstate wires in furtherance of the scheme, and (3) the specific intent to defraud." *United States v. Hoffman*, 901 F.3d 523, 545 (5th Cir. 2018), *as revised* (Aug. 28, 2018), *cert. denied*, No. 18-1049, 2019 WL 536773 (U.S. May 20, 2019).

When, however, the claims over which the Court has original federal jurisdiction are dismissed, the Court may decline to exercise supplemental jurisdiction over the non-federal claims. Section 1367(c) provides in this respect, as follows:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --
> (1)   the claim raises a novel or complex issue of State law,
> (2)   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3)   the district court has dismissed all claims over which it has original jurisdiction, or
> (4)   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In addition to the four statutory factors set forth in § 1367(c) that are to be considered, four common law interest factors of judicial economy, convenience, fairness and comity must be considered when determining whether to exercise or decline supplemental jurisdiction over state law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Enochs v. Lampasas County*, 641 F.3d 155, 159 (5th Cir. 2011) (balancing four factors in § 1367(c) to determine whether district court abused its discretion in denying motion to remand).

Here, where Plaintiff's federal claims are not plausible, and where Plaintiff's factual allegations point most directly decidedly to the state law nuisance and trespass claims, the Magistrate Judge concludes that supplemental jurisdiction should be declined and the state law claims dismissed without prejudice to re-filing in state court. This case is, at bottom, a case about the improper ingress and egress onto Plaintiff's property and the unauthorized dumping of vast quantities of dirt thereon. Taking Plaintiff's factual allegations as true, that dumping, whether it was intentional or negligent, constituted a trespass under Texas law, *see Envtl. Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 419 (Tex. 2015) (trespass under Texas law encompasses three elements: "(1) entry (2)

16

onto the property of another (3) without the property owner's consent or authorization"), and caused,

under Texas law, a "nuisance," *Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003) ("A

'nuisance' is a condition that substantially interferes with the use and enjoyment of land by causing

unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and

enjoy it,"), which enriched Defendants at Plaintiff's expense. While § 1367(c)(3) allows the Court

to decline supplemental jurisdiction over the remaining state law claims, the common interest factors

also support the dismissal of Plaintiff's state claims without prejudice. This case has not been

pending for long, and Plaintiff has already amended his complaint twice to add more defendants.

While a scheduling order has been entered and there is a discovery deadline of October 1, 2019, it

does not appear that much, if any, discovery has been taken. This case is, therefore, not so far along

to warrant the exercise of supplemental jurisdiction over the state law claims. The issues of

convenience and fairness also do not warrant the retention of the state law claims in this federal

forum. Plaintiff has recently named numerous additional Defendants – many of whom are presumed

to be Texas residents. It would not be unfair or inconvenient for Plaintiff, who is also alleged to be

a Texas resident, to litigate his state law claims in state court. As for the comity issue, because

Plaintiff's factual allegations most closely align with state law claims of trespass, nuisance and

negligence, the state courts have a significantly greater interest in resolving this state law dispute

than this Court. The remaining state law claims should, therefore, be dismissed without prejudice,

pursuant to 28 U.S.C. § 1367(c)(3).

## V.    Conclusion and Recommendation

Based on the foregoing, and the conclusion that Plaintiff has not stated a plausible RICO or RCRA claim against Defendants, and that the Court, in its discretion, should decline to exercise supplemental jurisdiction over the remaining state law claims, the Magistrate Judge

RECOMMENDS that Defendants' Motions to Dismiss (Document Nos. 13, 23, 25 and 49) all be GRANTED, that Plaintiff's RICO and RCRA/CERCLA all be DISMISSED WITH PREJUDICE pursuant to Rule 12(b)(6), and that the remaining state law claims be DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c).

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140, 144-145 (1985); *Ware v. King*, 694 F.2d 89, 91 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this _8th_ day of June, 2019.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

18